UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| **BUFFALO SEAFOOD HOUSE LLC, BUDGET INNS OF PENSACOLA, INC. d.b.a. PALM COURT INN, ADELE J. ORIOL as trustee of ADELE DI STEFANO LIVING TRUST, and SVO LAWN & GARDEN LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**REPUBLIC SERVICES, INC., REPUBLIC SERVICES OF SOUTH CAROLINA, LLC, BROWNING-FERRIS INDUSTRIES OF FLORIDA, INC., ALLIED WASTE SYSTEMS, INC., and REPUBLIC WASTE SERVICES OF TEXAS, LTD,**<br><br>Defendants. | Case No.: 7:22-cv-1242-RMG<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

Plaintiffs Buffalo Seafood House LLC, Budget Inns of Pensacola, Inc., Adele J. Oriol as trustee of Adele Di Stefano Living Trust, and SVO Lawn & Garden LLC file this Class Action Complaint against Defendants Republic Services, Inc., Republic Services of South Carolina, LLC, Browning-Ferris Industries of Florida, Inc., Allied Waste Systems, Inc. and Republic Waste Services of Texas, Ltd (collectively "Republic" or "Defendants") on behalf of itself and all others similarly situated in all states except Alabama, Arkansas, Louisiana, Missouri, and Oklahoma. In support thereof, Plaintiffs state the following:

### I.    NATURE OF THE CASE

1.    Republic has engaged in a widespread and systematic practice of overcharging its

customers through two separate, but related coordinated schemes: implementing unlawful rate increases and charging unlawful and excessive "Fuel Recovery Fees".

2.    Republic is one of the largest solid waste disposal companies in the United States, with some $950 million in annual revenue. Like thousands of other small businesses across the country, Plaintiffs paid Republic for waste disposal pursuant to a standard, preprinted contract. Notably, this contract is uniform among putative class members in all relevant aspects and typically contains a multi-year term. The primary purpose of the form contract is to establish rates a given customer will pay Republic for waste pickup.

3.    In violation of the form contract and of state statutory and common law, Republic has carried out a systematic deceptive and unfair scheme to charge its customers more than the agreed amounts.

4.    Republic enters into the agreements knowing that it will increase the promised rates without justification. The contracts specifically restrict Republic's ability to increase rates to five specific circumstances, only one of which is at issue in this case. Specifically, the form contract contemplates that Republic may increase rates "to adjust for any increase in . . . the Consumer Price Index . . . ." In blatant violation of this contractual limitation, Republic has deliberately and repeatedly overcharged customers through automated rate increases that far out-strip the increases—if any—in consumer price index. These rate increases are imposed frequently and are significant in amount, often exceeding 90% over the course of a contractual term, and greatly exceed the increases in the consumer price index which purportedly justify them.

5.    In addition to assessing automated rate increases on its customers, Republic has also increased prices by imposing a fee it calls a "Fuel Recovery Fee" but which, in fact, has no relationship to its actual or increased fuel costs. Rather, Republic uses this fee—in intent and

effect—as a hidden price increase. The Fuel Recovery Fee bears absolutely no relation to Republic's actual or increased fuel costs and Republic does not use the proceeds from the Fuel Recovery Fee to offset such costs. In fact, Republic includes any fuel costs it might incur in delivering its services through the standard rates it charges customers. Republic simply uses the Fuel Recovery Fee to generate extra profit at its customers' expense, all the while deceiving customers into believing that the fee is a legitimate charge directly related to specific increased costs it incurs.

6.      Further, this case presents a prototypical situation for class treatment. Republic's conduct—including all relevant practices, conduct, and documents—is uniform among all class members. The application of common law to an identical course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, the proposed classes consist of more than 100 members, and minimal diversity exists (Plaintiffs are citizens of South Carolina, Florida, and California, respectively, while Defendants are citizens of Delaware and Arizona). Republic has more than one million customers, the majority of which, upon information and belief after investigation, entered into the form contract at issue and were subject to the rate increase and fuel surcharge practices at issue here.

8.      This Court has personal jurisdiction over Defendants because Republic is authorized to do business and in fact does business in this District, the claims asserted in this case arise or relate in part to conduct that originated and took place in this District, and Defendants

could reasonably anticipate litigation in this District under traditional notions of fair play and substantial justice.

9.      In addition to its conduct in South Carolina that gives rise to specific personal jurisdiction, Defendant Republic Services of South Carolina, LLC has such continuous and systematic contacts with this state that it is subject to general personal jurisdiction. As its name suggests, Republic Services of South Carolina, LLC exists solely to hold property and to be the contracting party and ostensibly provide services exclusively to customers in South Carolina. South Carolina is the only state in which it provides services and holds property with any regularity or magnitude. It enters contracts with customers in South Carolina. It owns property in South Carolina including at 8101 Palmetto Commerce Parkway, Ladson, South Carolina 29456, 684 Mauldin Road, Greenville, South Carolina 29607, and 868 Wildcat Road, Enroee, South Carolina 29335, which is used to provide services in this state. It pays taxes for these properties and for other purposes. It is registered to do business in this state and has a registered agent at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. It has numerous employees in South Carolina who provide services.

10.     As discussed below, Republic Services, Inc. exercises such dominion and control over its subsidiaries, including Republic Services of South Carolina, LLC, Browning-Ferris Industries of Florida, Inc., Allied Waste Systems, Inc., and Republic Waste Services of Texas, Ltd that venue is proper and jurisdiction appropriate over all of them in this District.

11.     Venue is proper in this Court under 28 U.S.C. § 1391 and the Court's Local Rules. Plaintiff Buffalo Seafood House LLC is located in this judicial district, and the conduct giving rise to Plaintiff's claims occurred in this judicial district.

12.     There is a strong, countervailing federal interest in this Court hearing these claims.

As detailed herein, Republic's uniform, unlawful conduct has impacted businesses across the country through the charging of "Fuel Recovery Fees" and increasing rates disallowed by contract. There are cases pending in other jurisdictions challenging Republic's conduct and the similar conduct of Republic's competitors.[1] The maintenance of this lawsuit would aid—not discourage— economic activity and investment in this state, in that Republic's conduct is anti-competitive to the businesses affected. Further, the causes of action below arose, at least in part, in South Carolina and the conduct involved is of a nature that it is not divisible.  Indeed, the involvement of all Defendants in this conduct necessitates their presence in a single suit in order to obtain full relief. Preventing the non-resident Plaintiffs and subclasses from sustaining this action would discriminate against them, frustrating the purpose of the Court's diversity jurisdiction to avoid discrimination of non-residents. Further, federal courts, like this Court, have an interest in enforcing the laws of sister states to which disallowing the Plaintiffs and subclasses from maintaining this case does violence.

### III.    PARTIES

13.    Buffalo Seafood House LLC is a South Carolina entity with its principal place of business in Buffalo, South Carolina.

14.    Budget Inns of Pensacola, Inc. is a Florida corporation with its principal place of business in Pensacola, Florida.

15.    The Adele Di Stefano Living Trust is a trust organized under the laws of the state of California of which Adele J. Oriol is trustee.

16.    Plaintiff SVR Lawn & Garden LLC is a Texas Corporation with its principal place

---

[1] *See, e.g., New Merkle Investors, LLC v. Republic Services, Inc. et al.* Case No. 01-CV-2021-903302.00 (Jefferson County, Alabama); *Bryce Brewer Law Firm, LLC v. Republic Services, Inc. et al.*, Case No 4:22-cv-00120-KGB (E.D. Ark.); *Pinnacle Waste Services, LLC v. Waste Connections US, Inc. et al.*, Case No. 7:21-cv-2600-DCC (D.S.C.); *Voodoo Leatherworks LLC v. Waste Connections US, Inc. et al.*, Case No. 1:21-cv-2005 (D. Colo.).

of business in Aledo, Texas.

17.    Plaintiffs' experiences with Republic are typical of the classes in all relevant aspects.   Plaintiffs entered into a form contract with Republic.   Republic unilaterally and unlawfully implemented automated rate increases that affected Plaintiffs (in that Plaintiffs paid the rate increases) which did not comply with the contractual terms.  Plaintiffs were invoiced and paid multiple "Fuel Recovery Fees" to Republic within the statutory period while under the form contract. The direct and proximate result of these unlawful, deceptive, and unfair automated rate increases is that Plaintiffs have been damaged by paying more than agreed.

18.    Republic Services, Inc., Republic Services of South Carolina, LLC, Browning-Ferris Industries of Florida, Inc., Allied Waste Systems, Inc., and Republic Waste Services of Texas, Ltd are all Delaware entities. All have a principal address at 18500 North Allied Way, Phoenix, AZ 85054.

19.    Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Republic Services Inc.'s subsidiaries are mere alter egos of Republic Services, Inc. Republic Services, Inc. and its subsidiaries—including the named Defendants here—share management structure and financial accounting and any legal distinction between these entities is a fiction designed to limit liability. All of the entities named as Defendants were directly involved in—and responsible for—the conduct alleged herein. Upon information and belief, Republic Services, Inc. designed, implemented, charged, and collected the Fuel Recovery Fees and rate increases, which contribute directly to their profit margins. Generally, upon information and belief following investigation, Republic Services, Inc. assesses the fees and rate increases, determines the amount of the fees and rate increases, and invoices for and collects payment for the fees and rate increases through lockbox services it controls. Republic Services of

South Carolina, LLC, Browning-Ferris Industries of Florida, Inc., Allied Waste Systems, Inc., and Republic Waste Services of Texas, Ltd, at Republic Services, Inc.'s direction, act as the forward-facing entity upon contracting and provides services to Republic Services, Inc. All management level decisions are made by Republic Services, Inc.

20.    As shown below, Republic Services, Inc. wholly owns all of the subsidiaries named in this case, the subsidiaries are completely financially dependent upon Republic Services, Inc., and the subsidiaries carry none of their own capital; all capital is all held by and attributed to Republic Services, Inc. The subsidiaries do not pay dividends and Republic Services, Inc.—as the dominant shareholder—continually siphons funds from its subsidiaries by collecting revenue attributable to the activities ostensibly carried on by the subsidiaries to Republic Services, Inc. directly. The executives of the subsidiaries are also employees of Republic Services, Inc. or are chosen by Republic Services, Inc. and under complete control of Republic Services, Inc. and rarely, if ever, meet. The corporate formalities are unobserved. For example, and not by way of limitation, Republic Services, Inc. is listed as the owner of—and pays taxes for—property that is owned by Republic Services of South Carolina, LLC and Browning Ferris Industries of Florida, Inc. Republic Services, Inc. explicitly brands and represents itself and its subsidiaries as one company. As explained below, Republic Services, Inc. treats the revenue of its subsidiaries as its own direct revenue and exercises complete control over every aspect of the business of the subsidiaries, down to day-to-day operations. They use this control to—as described below—unlawfully increase rates and charge unlawful "Fuel Recovery Fees." This conduct is fundamentally unfair. As the entity in control and directing all of the conduct, it was aware that the rate increases and Fuel Recovery fees breached the contract and/or were otherwise unlawful yet it continually directed the conduct through its subsidiaries while concealing the nature of its

conduct in disregard of the rights of Plaintiffs and class members.

21.     Indeed, in public filings, records, and representations, Republic Services, Inc. confirms the high level of control of all the aspects of the business of its subsidiaries—in particular the rate increases and Fuel Recovery Fees at issue—including Republic Services of South Carolina, LLC, Browning-Ferris Industries of Florida, Inc., and Allied Waste Systems, Inc. and detailed financial accounting that it utilizes to recognize revenue from them—specifically including revenue from Fuel Recovery Fees and Rate Increases.

22.     Republic Services, Inc. claims 35,000 employees, facilities in 41 states, and 345 collection operations, including Republic Services of South Carolina, LLC, and Browning-Ferris Industries of Florida, Inc.[2] Republic Services, Inc. touts its standardized practices "through the Republic Way: *One Way. Everywhere. Every day*. This approach of developing standardized processes with rigorous controls and tracking allows [Republic Services, Inc.] to leverage our scale and deliver durable operational excellence."[3] Republic Services, Inc. "maintain[s] 360-degree accountability" of its subsidiaries and has "maintained, in all material respects, effective internal control over [their] financial reporting."[4] Republic Services, Inc. mandates and controls nearly every aspect of its subsidiaries' business including property, vehicles, safety measures for operation, and equipment standards.[5] It has specific standards for recognizing its own revenue accountable to collection operations and does so "when control is transferred to the customer, generally at the time [Republic] provide[s] a service. Revenue is measured as the amount of consideration [Republic] expect[s] to receive in exchange for providing a service."[6]

---

[2] Republic 2020 10k at 1, 5 (available at https://investor.republicservices.com/static-files/d70c8229-495e-40fc-94bc-02b7f10c1fdb).
[3] *Id*. at 3 (emphasis in original).
[4] *Id*. at 3, 63.
[5] *Id*. at 27, 5, 4.
[6] *Id*. at 77.

23.    The finances and property of Republic Services, Inc. and its subsidiaries are deeply intertwined. It recognizes as liability taxes attributable to the states in which it operates.[7] Republic Services, Inc. is listed as the owner of property in South Carolina on property tax records including in Charleston County. It uses this and other properties to provide waste disposal services. It pays taxes for its subsidiaries in the states in which they operate.

24.    Republic Services, Inc. plays a large, indispensable role in administering contracts as well as increasing rates.[8] Republic Services, Inc.'s President, Jon Vander Ark "is responsible for overseeing the Company's operations, sales, marketing and business development."[9] Republic brands itself on its website, in its promotional materials, on its vehicles, and with signage on its properties as one entity. Republic Services, Inc. has completely centralized and standardized customer service for its subsidiaries, including "consolidat[ing] over 100 customer service locations into three Customer Resource Centers" and instituting standard customer service tools, including the tools by which customers can pay their bills directly to Republic Services, Inc.[10] It has also implemented standardized pricing practices, including the calculation and implementation of rate increases. Republic Services, Inc. mandates use of its standardized sales and pricing tools "nationwide."[11] It uses a "Priority Based Selling (PBS) technique" that enables it "to identify and segment customers' buying priorities, and attract customers that are willing to pay for enhanced offerings."[12] For pricing, it mandates the use of a pricing tool called "Capture," "a cloud-based

---

[7] *Id* at 94.

[8] *Id*. at 2 ("We seek to obtain long-term contracts for collecting recyclable and solid waste material under residential collection contracts with municipalities, exclusive franchise agreements, and small-container and large-container contracts.").

[9] 2021 Proxy Statement at 48 (available at https://investor.republicservices.com/static-files/5a2c573a-c7a5-4a9f-b58d-fa5a92f98961).

[10] *Id*. at 4; *see also* 2021 Investor Presentation at 11 (available at https://investor.republicservices.com/static-files/324da296-bf2f-49e2-8321-6aa7afd66085).

[11] Republic 2020 10k at 7.

[12] *Id*.

pricing tool that creates a more professional sales experience, helps realize better pricing levels at the point of sale and provides enhanced controls over the price quoting process."[13] Republic Services, Inc. itself seeks "to secure price increases" at issue here. It specifically analyzes contractual "ability" to increase rates based upon the contractual provisions.[14] Republic Services, Inc. specifically tracks the amounts of its revenue attributable to rate increases.[15] It actively tracks the numbers of customers on standard form contracts with potentially-varying price increase provisions as a way to increase revenue.[16] In sum, Republic Services, Inc. tightly controls the pricing of services applicable to customers across the country.

25.     Republic Services, Inc. also calculates, charges, and collects "Fuel Recovery Fees." It directly tracks and accounts for the cost of fuel for all of its subsidiaries including BFI Waste Services, LLC.[17] It purchases fuel on behalf of its subsidiaries and "may enter into new fuel hedges, renew contracts, or engage in other strategies to mitigate market risk."[18] Republic Services, Inc. states that "we charge fuel recovery fees to a majority of our customers" and that such fees "generate revenue through the collection of fuel recovery fees." [19] It also specifically accounts for revenue it collects that is a direct result of "Fuel Recovery Fees" and includes such

---

[13] *Id*.

[14] *Id*. at 26 ("We seek to secure price increases necessary to offset increased costs, improve our operating margins and earn an appropriate return on our substantial investments in assets such as our landfills. . . . Contractual, general economic or market-specific conditions also may limit our ability to raise prices. For example, many of our contracts have price adjustment provisions that are tied to an index such as the consumer price index. Particularly in a weak U.S. economy, our costs may increase in excess of the increase, if any, in the consumer price index . . . . As a result, we may be unable to offset increases in costs, improve our operating margins and obtain adequate investment returns through price increases. Price increases also might cause us to lose volume to lower-cost competitors.")

[15] *Id*. at 36. ("Average yield is defined as revenue growth from the change in average price per unit of service, expressed as a percentage. Core price is defined as price increases to our customers and fees, excluding fuel recovery, net of price decreases to retain customers.")

[16] 2021 Investor Presentation at 17 (discussing "open market" versus "restricted pricing" models and "Converting CPI based ontracts to a more favorable index or fixed rate of 3% or greater").

[17] Republic 2020 10k at 22 ("Our fuel costs were $271.7 million in 2020, or 2.7% of revenue, compared to $347.9 million in 2019, or 3.4% of revenue."); 2020 GRI Report at 32 (available at https://investor.republicservices.com/static-files/ff6f6c48-2373-4f03-bc55-674e6f773565).

[18] Republic 2020 10k at 57.

[19] *Id*. at 57, 107.

revenue on financial disclosures.[20]  Republic calls the charging of the Fee the "fuel recovery fee program, which mitigates [its] exposure to increases in fuel prices."[21] Republic Services, Inc. controls the amount of the "Fuel Recovery Fee" as evidenced by the fact that it may offset changes in its fuel expense through "changes in our fuel recovery fee charged to customers."[22] Republic not only accounts for its fuel costs but plays a role in calculating, charging, and collecting "Fuel Recovery Fees."

## IV.    FACTUAL ALLEGATIONS

26.    Republic is one of the largest waste disposal companies in the United States, with millions of customers, locations in forty-one states, and over $950 million in annual revenue.

27.    Plaintiffs require solid waste disposal services and, like thousands of others, entered into standardized agreements with Republic to provide these services. This agreement is a long-term contract that primarily establishes a set rate for disposal services and which contains standardized language that governs it. The agreement also provides how Republic may be able to increase rates to pass through specific cost increases it incurs during the pendency and renewal terms of that contact.  And, like thousands of other small businesses, after locking customers into these long-term contracts, Republic systematically increased rates with no contractual justification and unilaterally imposed unlawful "Fuel Recovery Fees."

28.    First, Republic's systematic, automated rate increases do not—in intent or effect— adjust for increases in the discrete costs (specifically increases in the Consumer Price Index ("CPI")) identified in the uniform contractual provision that allows for them.  Rather, after entering into long-term, fixed-rate contracts, Republic carries out a deliberate scheme to repeatedly increase

---

[20] *Id*. at 36 (listing "Fuel recovery fee" as a "component" of its revenue).
[21] *Id*. at 36.
[22] *Id*. at 19; *see also Id*. at 108 ("our fuel recovery fee program").

rates without contractual justification by amounts that far exceed any increases in CPI that purportedly justify them or amounts needed to adjust for increases in CPI. Upon information and belief, it does so through a consistent, centralized automated rate increase process that was intended to glean tens of millions of dollars of unearned profit from its customers. This conduct breaches the form contract, has resulted in Republic's unjust enrichment, and violates California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200 *et seq*. ("UCL") and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203(7) ("FDUTPA").

29.    Second, the fees Republic calls "Fuel Recovery Fees," are not, in fact, related to Republic's increased or actual fuel costs at all. They are not charged—or intended—to recover increased or actual fuel costs and such costs are regardless recovered through other pricing and fee mechanisms. Republic's charging and collection of these Fuel Recovery Fees has resulted in Republic's unjust enrichment, and violates the UCL and FDUTPA.

**A.    The Standardized, Uniform Language At Issue.**

30.    Republic used effectively standardized "customer service agreements" to contract with customers regardless of location. Based upon investigation, each time Republic seeks to secure a customer for its services, it presents an effectively identical form contract. Every putative class member entered into such an effectively identical form contract. All relevant terms are pre-printed by Republic, including the uniform "Rate Adjustments" provision that governs the rate increases at issue in this litigation. Several categories of customer-specific information—including the billing and service addresses, names and contact information, rates (in dollar amounts which are set by Republic Services, Inc.), and other information needed for Republic to input the new customer into its information systems—is typed or written in for each specific customer. Upon information and belief following investigation, this must be completed before Republic will serve

a new customer with dumpster solid waste disposal service.

31.     This Rate Adjustments provision allows for Republic to pass through specific, discrete increases in costs it may incur in providing services to customers.  Specifically, it states Republic:

> may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in:…(c) the Consumer Price Index for all Urban Consumers….[23]

32.     Thus, under the express terms of this provision, Republic may implement rate increases to adjust for "increases" to the specific identified areas of discrete costs, only one of which—increases in the Consumer Price Index—is at issue here (Republic does not implement increases to purportedly adjust for the other listed causes across multiple customers at the same time or in the same amount).  Republic purportedly implements rate increases to adjust for increases in the Consumer Price Index through systematic, automated rate increases uniform among its customers.

33.     Aside from establishing the fixed rate for service and the limited manner in which Republic may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a long term of at least three years, (b) integrate the contract, and (c) allow Republic punitive remedies including suspension, the payment of fees, and the payment of future amounts—up to six months—that Republic maintains are due under the contract in the event a customer fails to pay any amount or wishes to terminate.

**B.     Republic's Unlawful, Unilateral Rate Increase Practice.**

34.     Republic violates the form contract and engages in deceptive and unfair conduct by

---

[23] This contractual language was changed at one point to specify "the Consumer Price Index for All Urban Consumers (Water, Sewer and Trash Collection Services), U.S. City Average…."  This change is non-substantive and, regardless, named Plaintiffs entered into both versions.

systematically increasing rates by more than amounts needed to adjust for increases in the Consumer Price Index.

35.     Republic has carried out a systematic and deliberate practice of repeatedly increasing rates in excess of any adjustment necessary for increases in the Consumer Price Index. Republic induces customers into entering into form contracts with fixed rates while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually, invariably, and unlawfully increasing rates by more than allowed by contract.

36.     Republic unilaterally imposes automated increases at least annually, and often more frequently. Upon information and belief, these rate increases are directed by Republic's corporate officers as part of a broad strategy to increase profit and are carried out through an automated process using Republic's customer relationship management system.

37.     The amount of the rate increases varies, but are significant, and can result in customers paying more than 50% more than agreed by the end of an agreement term. Each increase Republic imposed on class members exceeds increases, if any, in the increases in the Consumer Price Index that would allow them under the contract, and the totality of such increases similarly far out-strip increases in the Consumer Price Index over any given time period. Upon information and belief, based upon investigation, Republic imposed rate increases identical in timing, methodology, and intent (and similar if not identical in percentage) across most of its customer base each year during the relevant time period.

38.     These unilateral automated rate increases violate the form contractual language that governs them and is present in every contact at issue, because they exceed any Consumer Price Index increases—or amounts necessary to adjust for those increases—that could possibly justify them. They are simply mechanisms by which Republic increases its profits. There is no legal

justification for Republic's practice of unilateral, systematic rate increases.  Republic knows when it presents contracts for fixed rates, that it will inflate these rates precipitously and continually. Republic's practices breach the form contractual language it entered into with Plaintiffs and other small businesses across the United States, violates the duty of good faith and fair dealing that underpins that contract, has resulted in it being unjustly enriched at its customers' expense, and violates UCL and FDUTPA.  As a direct result of its unlawful rate increase conduct, Republic has wrongfully taken millions of dollars from its customers over the statutory period.

39.     Republic also has omitted material facts regarding the rate increases.  For example, Republic does not disclose that the increases are not related to any increase in the CPI, that the increases far outstrip increases in the CPI, and that the increases are recognized as profit.  In truth, Republic devised, implemented, and set the amounts of the rate increases simply to increase its profits without any intent of adjusting prices to adjust for increases in the CPI. Republic knows when it enters into an agreement with a customer that the customer will pay substantially more than the agreed upon service rate through rate increases that are entirely unfair, deceptive and/or misleading.  Republic does not disclose this fact to its customers.

**C.     Republic's Unlawful "Fuel Recovery Fees."**

40.     Republic charges its customers a fee it calls a "Fuel Recovery Fee."  It does so, purportedly, to recover increased or actual fuel costs it incurs in providing services to customers in accordance with the uniform representations it makes to customers through language incorporated into invoices and its website.  This fee is a percentage of all the invoice charges and is significant in amount, reaching over 25% or hundreds of dollars a month for some customers. Republic periodically increases the percentage of the "Fuel Recovery Fee," but, upon information and belief, has never decreased this percentage.

41.     The "Fuel Recovery Fee" is in no way related to Republic's fuel costs it incurs. The "Fuel Recovery Fee" is not charged to defray those increased costs.  Republic does not apply the money received from the "Fuel Recovery Fee" to offset any such increased costs; rather, it is recognized as revenue and contributes directly to Republic's profit. Republic has not—during the relevant period—experienced any increased "fuel costs," particularly on a per-customer basis, as it enters into fixed-price fuel purchase contracts.

42.     Republic did not design the "Fuel Recovery Fee" to "recover" any increased or actual fuel costs it incurs. The method by which Republic determines the "Fuel Recovery Fee" has no relation to its increased or actual fuel costs or to any changes in those costs.  It is arbitrary in that the only driving factor is the profit Republic seeks to derive from this fee while maintaining the false appearance of the fee as a legitimate charge related to specific, discrete costs.  Republic has done no legitimate analysis to determine the proper amount of the "Fuel Recovery Fee" in connection to its increased or actual fuel costs.

43.     Indeed, the "Fuel Recovery Fee" does not fluctuate in any way with Republic's fuel or material costs and has increased while its per-customer fuel costs have decreased.  For example, the "Fuel Recovery Fee" charged has increased at the same time that fuel costs decreased.

44.     Additionally, Republic already fully recovers any fuel costs that purportedly justify this fee through the base rate it charges customers and increases to that rate. These rates include the individual component costs of Republic's business, including—specifically—the costs of fuel, materials, and other overhead.  When setting and increasing rates, Republic takes into account its fuel costs to recover such costs, and the "Fuel Recovery Fee" is wholly unlawful as it does not reflect any fuel costs that are not already recovered.  As such, Republic has been unjustly enriched by collecting the Fuel Recovery Fees and Republic's conduct puts the entirety of the amounts

charged at issue.

45.     Republic also has omitted material facts regarding the "Fuel Recovery Fees."  For example, Republic does not disclose that the fee is not related to Republic's increased or actual fuel costs, that that Republic's increased fuel costs are not a factor in the amount of the "Fuel Recovery Fee," and that the "Fuel Recovery Fee" is recognized as profit.  Republic does not disclose its actual fuel costs to customers nor does it disclose the methodology, to the extent there is one, used to determine the percentage of the invoiced charges that makes up the "Fuel Recovery Fee."  In truth, Republic devised, implemented, and set the amount of the "Fuel Recovery Fee" simply to increase its profits without any intent of recovering the actual or increased fuel costs they incur in servicing customers. Republic knows when it enters into an agreement with a customer that the customer will pay substantially more than the agreed upon service rate through a "Fuel Recovery Fee" which is entirely unfair, deceptive and/or misleading.  Republic does not disclose this fact to its customers.

**D.     Neither Plaintiffs, Nor Any Putative Class Member, Had Full Knowledge Of the Facts Relating to The "Fuel Recovery Fee" Or Rate Increases.**

46.     No putative class member, including Plaintiffs had full knowledge of the facts pertaining to the rate increases or the "Fuel Recovery Fee" such that would allow them to realize or act on their legal claims.

47.     Republic ensures that no customer—including Plaintiffs—can discover the true nature and illegality of the rate increases. Republic does not disclose cost metrics—including which, if any, CPI measures—it purportedly is using or the amounts, frequency, and timing of the rate increases. [24] Nor does Republic disclose the methodology—or lack thereof—that purportedly

---

[24] The increases at issue here were purportedly increases to adjust for increases in CPI because Republic did not experience any increases in the other identified cost areas that could justify an increase.

justifies the increase or the amount of the increases. Further, Republic represents—including by failing to seek consent for any increases—that these are mandatory CPI increases and not increases to which customers must consent. Plaintiffs could not have discovered the basis of their claims without either candor from Republic or access to Republic's financial information that it does not make public. Republic made these representations and omissions every time it implemented an increase, including in 2020 and 2021 when it implemented rate increases applicable to Plaintiffs. Plaintiffs reasonably relied on these representations and omissions as evidenced by the payment of the fees and charges. Without such information, no customer could—and Plaintiffs did not—determine the illegality of a given rate increase imposed by Republic. For these reasons, Plaintiffs and other class members were unaware of the basis of their claims due to the omissions and representations that Republic employed to obscure the facts and calculations of the increases. Plaintiffs did not and could not learn of the facts surrounding the increases—including that they bore no relation to CPI and that they exceeded amounts needed to adjust for increases in CPI—until shortly before this lawsuit was filed through privileged consultation with counsel.

48.     Further, Plaintiffs challenge the rate increases implemented in order to adjust for increases in CPI. These are separate from increases that Republic may implement "for reasons other than those set forth above with [c]ustomer[s'] consent." When Republic implements an increase for one of the specified reasons—including to adjust for increases in CPI—a customer has no discretion whether to accept the increase. It becomes an amount due under the payment provision of the contract. The customer must pay up to six months monthly charges to terminate the contract under the payment upon termination provision of the contract if it wishes to terminate. If the rate increase is one "for reasons other than those set forth," the customer would have a right to terminate the contract for the breach in charging more than agreed without being subject to

paying the termination penalty. Thus, there was no consent to the increases at issue here by any class member nor could there be under the terms of the contract.

49.     Republic further ensures that customers cannot discover the true nature, purpose, and use of the "Fuel Recovery Fee."  Republic uniformly uses this term to charge this fee to Plaintiffs and putative class members.  It does so consistently and continually, including every time it assesses the fee on monthly invoices.  Republic chose this term for a reason: it has a common, understood meaning for any reasonable consumer, including for Plaintiffs and putative class members, and indicates that it is a fee charged to recover fuel costs incurred by Republic, is related to such costs, and is used to offset or recover such costs, as required by the form agreement. Indeed, it specifically sought to convey this commonly understood meaning by referring to it as an enterprise-wide fee. Even if Republic disclosed a margin component included in the "Fuel Recovery Fee," it still claimed that the "Fuel Recovery Fee" was tied to its costs of fuel, which it was not.

50.     By using this fee term—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Republic deliberately misled Plaintiffs and putative customers as to the nature, purpose, and use of the "Fuel Recovery Fee." Republic also omitted material facts regarding the "Fuel Recovery Fee," including that it is not related to any actual or increased fuel costs that Republic has and that Republic's fuel costs are not used to set the fee. Republic does not disclose that its methodology bears no relationship to its actual or increased fuel costs through the percentage it chooses to charge.

51.     Republic thus ensures that no customer—including Plaintiffs—can discover the true nature and illegality of the "Fuel Recovery Fees." Republic does not disclose its actual or increased fuel costs that purportedly justify the "Fuel Recovery Fee." Nor does Republic disclose

that the "Fuel Recovery Fee" is not at all related to its cost of fuel. Plaintiffs could not have discovered the basis of their claims without either candor from Republic or access to Republic's financial information that it does not make public. Republic made these representations and omissions every time it charged a "Fuel Recovery Fee," including on every invoice sent to Plaintiffs in 2020 and 2021 and through the representations on its website in existence since 2013. Plaintiffs reasonably relied on these representations and omissions as evidenced by the payment of the fees and charges. Without such information, no customer could—and Plaintiffs did not— determine the illegality of a the "Fuel Recovery Fees" charged by Republic. For these reasons, Plaintiffs and other class members were unaware of the basis of their claims due to the omissions and representations that Republic employed to obscure the facts and calculations of the "Fuel Recovery Fee." Plaintiffs did not, and could not have, learned of the facts relating to the fee— including that it bore no relation to Republics fuel costs and was not applied to recover those costs—until shortly before this lawsuit was filed.

52.     Further, Plaintiffs and each putative class member were under a contractual, legal obligation to pay the invoiced charges to Republic.  Upon information and belief, Republic enforces its form contracts—including punitive provisions for attorneys' fees and future due amounts—to ensure that customers cannot escape them, even if such customers could have known that the "Fuel Recovery Fees" and rate increases were unlawful and deceptive.

## V.     CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and proposes the following classes and subclasses:

**The Rate Increase Class:** All entities and people who reside in the United States who entered into a written contract with Republic that provides "Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in . . . the Consumer Price Index for all Urban

Consumers . . . .” and who—within the applicable statute of limitations—paid rates to Republic in excess of those originally listed in the written contract.

> **The South Carolina Rate Increase Subclass:** All entities and people who reside in South Carolina who entered into a written contract with Republic that provides “Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in . . . the Consumer Price Index for all Urban Consumers . . . .” and who— within the applicable statute of limitations—paid rates to Republic in excess of those originally listed in the written contract.

> **The Florida Rate Increase Subclass:** All entities and people who reside in Florida who entered into a written contract with Republic that provides “Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in . . . the Consumer Price Index for all Urban Consumers . . . .” and who—within the applicable statute of limitations—paid rates to Republic in excess of those originally listed in the written contract.

> **The California Rate Increase Subclass**: All entities and people who reside in California who entered into a written contract with Republic that provides “Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in . . . the Consumer Price Index for all Urban Consumers . . . .” and who—within the applicable statute of limitations—paid rates to Republic in excess of those originally listed in the written contract.

> **The Texas Rate Increase Subclass:** All entities and people who reside in Texas who entered into a written contract with Republic that provides “Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in . . . the Consumer Price Index for all Urban Consumers . . . .” and who—within the applicable statute of limitations—paid rates to Republic in excess of those originally listed in the written contract.

**The “Fuel Recovery Fee” Class:** All entities and people who reside in the United States who, within the applicable statute of limitations, paid a Republic a “Fuel Recovery Fee.”

> **The South Carolina “Fuel Recovery Fee” Subclass:** All entities and people who reside in Florida who, within the applicable statute of limitations, paid Republic a “Fuel Recovery Fee.”

> **The Florida “Fuel Recovery Fee” Subclass:** All entities and people who reside in Florida who, within the applicable statute of limitations, paid

Republic a "Fuel Recovery Fee."

**The California "Fuel Recovery Fee" Subclass:** All entities and people who reside in California who, within the applicable statute of limitations, paid Republic a "Fuel Recovery Fee."

**The Texas "Fuel Recovery Fee" Subclass:** All entities and people who reside in Texas who, within the applicable statute of limitations, paid Republic a "Fuel Recovery Fee."

54.     Excluded from the Classes are all entities and people who reside in Alabama, Arkansas, Louisiana, Missouri and Oklahoma.

55.     The Classes includes such customers who entered into contracts which provide "the Consumer Price Index for All Urban Consumers (Water, Sewer and Trash Collection Services), U.S. City Average…."

56.     All Plaintiffs seek to represent the Rate Increase Class and the Fuel Recovery Fee Class. Plaintiff Buffalo Seafood House LLC seeks to represent the South Carolina Rate Increase and South Carolina Fuel Recovery Fee Subclasses. Plaintiff Budget Inns of Pensacola, Inc. seeks to represent the Florida Rate Increase and Florida Fuel Recovery Fee Subclasses. The Adele Di Stefano Living Trust seeks to represent the California Rate Increase and California Fuel Recovery Fee Subclasses.  Plaintiff SVO Lawn & Garden LLC seeks to represent the Texas Rate Increase and Texas Fuel Recovery Fee Subclasses.

57.     Excluded from the proposed classes are (1) any customer who entered into a contract which contains an arbitration provision or class waiver, (2) any customer who has signed a release of any claims against Republic, (3) any customer who makes a timely election to be excluded from the Class, (4) any parents, subsidiaries, affiliates, officers, or directors of Republic, (5) and any entity in which Republic has a controlling interest, (6) members of the judiciary who preside over this case or related litigation, (7) entities currently in bankruptcy or whose obligations

have been discharged in bankruptcy, and (8) governmental entities.

58.    As used in these class definitions, "Republic" means Republic Services, Inc., Republic Services of South Carolina, LLC, Browning-Ferris Industries of Florida, Inc., Allied Waste Systems, Inc., Republic Waste Services of Texas, Ltd, and all related entities, predecessors, subsidiaries, affiliates, and parent companies.

59.    As used in these definitions, "Fuel Recovery Fee" includes this fee regardless of the nomenclature used to charge it.

60.    Plaintiffs maintain the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

**A.    Existence And Predominance Of Common Questions Of Law And Fact.**

61.    Republic engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation.  This common course of conduct—imposing "Fuel Recovery Fees" and rate increases that were unlawful and excessive—affected class members in the exact same manner.  The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Republic's common conduct.  A single, uniform, pre-printed contract will govern all class members' contractual claims.  Extraneous contractual evidence is prohibited by a form integration clause.

62.    This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist.  Such common questions include, but are not limited to, the following:

    a.    Whether Republic used standard form contracts with customers;

b.  Whether Republic imposed rate increases on putative class members who entered into the standard contract;

c.  Whether Republic's standard contract only allowed Republic to increase rates to adjust for increases in the specifically identified categories of costs;

d.  Whether Republic's rate increases exceeded any adjustments for increases in the specific costs which could support them under the contract;

e.  Whether the rate increases Republic enacted were not in good faith;

f.  Whether the rate increases Republic enacted resulted in it being unjustly enriched;

g.  Whether Republic assessed "Fuel Recovery Fees" to customers;

h.  Whether the "Fuel Recovery Fee" Republic imposes is designed or intended to recover Republic's actual or increased fuel costs;

i.  Whether Republic has any increased fuel costs;

j.  Whether Republic recovers the same costs which purportedly justify the "Fuel Recovery Fee" through other means, including base rates and increases to such rates;

k.  Whether Republic uses revenue from the "Fuel Recovery Fee" to offset its fuel costs;

l.  Whether the "Fuel Recovery Fees" exceed any fuel costs Republic may incur;

m.  Whether Republic has been unjustly enriched by the "Fuel Recovery Fees."

**B.    Numerosity.**

63.    The total number of members of each putative class is so numerous that individual joinder is impracticable.  Republic has thousands of customers in the states at issue who entered in the form contract and paid the "Fuel Recovery Fee" and rate increases.

**C.    Typicality.**

64.    The claims of the named Plaintiffs are typical of the claims of the classes and subclasses.  Plaintiffs, like other class members, entered into the form contract, paid rate increases that were not legally justified and paid unlawful "Fuel Recovery Fees."  Plaintiffs were subject to, and harmed by, the exact same common policies and practices which affected all class members.

**D.    Adequacy.**

65.    Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members.  Plaintiffs share the same interests and were harmed by the same conduct as each other class member.  Resolution of this case will inherently vindicate and redress the interests of Plaintiffs equally with class members. Plaintiffs have retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

**E.    Superiority And Manageability.**

66.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is considerable, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims.  The interests of judicial economy favor adjudicating the claims for the classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision.  The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Republic. Calculation of damages can be accomplished using systematic means and objective criteria.  The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies

of scale and comprehensive supervision by a single court.

## VI.     CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (Rate Increase Class and Subclasses)

67.     All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

68.     Plaintiffs and each member of the Rate Increase Class entered into standardized agreements with Republic which contain identical relevant contractual language.

69.     Plaintiffs and each member of the class performed on their agreements, including by paying Republic for services.

70.     As set out herein, through its practice of unilaterally increasing rates by more than allowed under the contract, specifically the "Rate Adjustments" provision referring to increases based upon increases to CPI, Republic breached the agreements.

71.     Plaintiffs and each member of the Rate Increase Class have been directly and proximately harmed by Republic's breach of contract in that each paid more than allowed by contract.

### COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (Rate Increase Class and Subclasses)

72.     All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

73.     To the extent necessary, this count is pled in the alternative.

74.     Plaintiffs and each member of the Rate Increase Class entered into standardized agreements with Republic which contain identical relevant contractual language.

75.     Plaintiffs and each member of the class performed on their agreements, including by paying Republic for services.

76.     Republic failed to perform on the agreements in good faith.  Republic acted arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract to adjust rates reasonably and in good faith.  Republic's uniform course of conduct in raising rates lacks honesty in fact and is inconsistent with the justified expectation that Republic would increase rates reasonably and only in accordance with the terms of the uniform contract. Through its wrongful conduct, Republic unfairly prevented Plaintiffs and each member of the class from receiving the full benefits of their agreements.

77.     Plaintiffs and each member of the class have been directly and proximately harmed by Republic's breach of the covenant of good faith and fair dealing in that each paid an unlawfully increased rate.

## COUNT III
## UNJUST ENRICHMENT
### (Rate Increase Class and Subclasses)

78.     All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

79.     To the extent necessary, this count is plead in the alternative.

80.     Through its rate increase practices, Republic received money from the putative class which in equity and justice it should not be permitted to keep.   By imposing rate increases which it knew to be not justified by any related increase and which do not adjust for changes in the Consumer Price Index, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Republic obtained money which properly belongs to the

putative class.  The benefit conferred by the putative class was non-gratuitous and Republic realized value from this benefit. It would be inequitable for Republic to retain this benefit.

81.     Plaintiffs and each member of the Rate Increase Class have been directly and proximately harmed by Republic's conduct in that each paid more for products and services than they rightfully owed.

**COUNT IV**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES**
**ACT, FLORIDA STATUTE § 501.201**
**(Florida Rate Increase Subclass)**

82.     All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

83.     To the extent necessary, this count is plead in the alternative.

84.     Plaintiff Budget Inns of Pensacola, Inc. and each member of the subclass are "consumers" under FDUTPA (Fla. Stat. § 501.203(7)). Each paid Republic for products or services.

85.     Republic engaged in deceptive conduct with regard to its systematic, unlawful rate increases as set out above, including by representing that it would increase rates as necessary to adjust for increases in discrete identifiable metrics—at issue here increases in CPI—at the time of contracting while knowing that it would consistently and continually increase rates in a manner unrelated to adjusting for increases in CPI. Republic also represented at the time of the increases that the increases at issue were allowed by contract and that customers like Plaintiff Budget Inns of Pensacola, Inc. had no discretion whether or not to accept them. Republic also withheld material facts regarding its rate increase policies (including not disclosing that the increases were greater than necessary to adjust for increases in CPI and were just a means of garnering extra profit). Republic and its agents and subsidiaries made these representations and omissions through

Republic Services, Inc.'s executives as part of its corporate strategy.[25]  Such conduct is likely to mislead customers acting reasonably, to their detriment.

86.     Republic engaged in unfair conduct with regard to the systematic, unlawful rate increases as set out above, including by implementing excessive, unlawful rate increases, by inducing customers into long term contracts without disclosing the rate increases that Republic intended to assess would be represented as mandatory and would be in excess of amounts needed to adjust for increases in CPI, and by forcing customers to pay such unlawful and unconscionable rate increases.

87.     Plaintiff Budget Inns of Pensacola, Inc. challenges these practices "per se," in that the rate increase conduct Republic engaged in (while it also violates the form agreements Republic enters into with customers) is deceptive and unfair under FDUTPA.

88.     As a result of the deceptive and unfair practices described above, Plaintiff and each member of the putative subclass incurred actual damages in that they paid the unlawful rate increases.

**COUNT V**
**VIOLATION OF UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof Code § 17200 *et seq.*)**
**(California Rate Increase Subclass)**

89.     All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

90.     To the extent necessary, this count is pled in the alternative.

91.     California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200-17210)

---

[25] The conduct at issue here, including the representations and omissions relating to rate increases, was carried out by Republic's top level executives and carried out at the location level through systematic means, including all of the consolidation policies and practices identified above. The specific officers and employees responsible for these representations and omissions is currently within Republic's exclusive possession and control, but, upon information and belief, include Jon Vander Ark, Tim Stuart, Brian Bales, and Amanda Hodges.

prohibits engaging in "any unlawful, unfair, or fraudulent business act or practice." Cal Bus. & Prof. Code § 17200.

92.    Republic is a "person" as defined in Cal. Bus. & Prof. Code § 17201.

93.    Republic has violated Cal. Bus. & Prof Code § 17200 *et seq*. by engaging in unfair, fraudulent, and unlawful business acts and practices.

**A.    Unfair Prong.**

94.    Plaintiff and class members have been harmed by Republic's unfair conduct. Such conduct includes but is not limited to systematically increasing rates by amounts more than allowed (at issue here to adjust for increases in CPI), failing to disclose information about the rate increases, and other conduct laid out above.

95.    The gravity of the harm caused by Republic's conduct—overcharging Plaintiff and class members by deceptively increasing rates—far outweighs the utility, if any, of Republic's conduct in garnering unearned profit from Plaintiff and class members through such a scheme. There is little to no justification for Republic's conduct. It is immoral, unethical, oppressive, and unscrupulous. The conduct threatens competition including in that it gives potential customers the appearance of rates that may be lower than competitors while Republic systematically and excessively increases those rates over the term of a contract.

96.    The injury to Plaintiff and the class members is substantial. Due to Republic's unfair conduct, Plaintiff and the class members paid money that was charged in the form of the improper rate increases charged on every invoice. This is not outweighed by the utility, if any, of Republic's conduct in garnering unearned profit through its rate increase program. Plaintiff and class members could not themselves have reasonably avoided this harm due to Republic's representations and because Republic did not disclose the information Plaintiff and class members

would need to discover the harm to them—namely, financial information in Republic's sole possession.

97.     Republic's unfair conduct surrounding rate increases caused Plaintiff and the class members the immediate harm of paying the increased rates.

98.     To the extent necessary for Plaintiff's claims regarding Republic's unfair conduct, Plaintiff and class members relied upon the representations and omissions and they were a substantial factor in them entering the contract and paying the increased rates. The representations were material and Plaintiff and class members would have behaved differently had they known the truth. The omissions were material and Republic had a duty to disclose them because it had exclusive knowledge of the material facts that were not known or reasonably accessible to Plaintiff and class members; Republic actively concealed material facts from Plaintiff and class members; and made partial representations about the increases in the contract that were misleading because the other facts were not disclosed. Plaintiff and class members would not have entered into contracts with Republic and would not have paid the increased rates at issue had they known the truth about the rate increases and had not been subject to Republic's representations and omissions.

**B.     Fraudulent Prong.**

99.     Plaintiff and subclass members have also been harmed by Republic's fraudulent representations. Such representations include but are not limited to representing that it would only increase rates in order to adjust for increases in CPI.

100.    This representation was made uniformly on form contracts at issue—as quoted above—and reinforced on Republic's website. To the extent necessary, Plaintiff and subclass members relied upon this representation, as made by Republic, in entering the contract and paying the increased rates in that it was a substantial factor in their decisions to do so. Plaintiff specifically

relied on the representation made in its contract. This representation was material as Plaintiff and subclass members would not have paid the increased rates had they known they was simply a profit-enhancement tool. The representations Republic made regarding the rate increases was false or misleading as the rate increases implemented far exceeded any amount necessary to adjust for increases in CPI. Republic made these representations in order to, and with the effect of, inducing Plaintiff and subclass members to enter the agreements and pay the increased rates.

101.    As a direct result of the unfair practices described above, Plaintiff and each member of the putative class has been harmed in that they paid the improper rate increases to their detriment, and seek to recover the excess of the amounts paid as restitution.[26]

102.    Plaintiff and subclass members were also harmed by Republic's fraudulent omissions. Such omissions include but are not limited to failing to disclose that, contrary to the representations it made about the ways in which it would increase rates, that Republic was implementing rate increases that far exceeded any amount needed to adjust for increases in CPI and that the rate increases were solely to be recognized as profit.

103.    Republic never disclosed these facts. Republic did not disclose its methodology for increasing rates. Republic did not disclose that it was implementing CPI adjustment increases as opposed to other types of increases.

104.    Republic's representations and failures to disclose material facts about the rate increases were likely to deceive an ordinary consumer given Republic's representations and omissions regarding the ways in which it was increasing rates.

105.    The facts Republic did not disclose were material and Republic had a duty to

---

[26] As alleged above, Plaintiff's claims are not that "it did not know" that Republic was increasing rates but that the increases Republic implemented were misrepresented as necessary to adjust for increases in CPI. Plaintiff relied upon these representations. Thus, Plaintiff and putative class members were damaged in that—as a direct consequence of Republic implementing the unfair rate increases—they paid the increased rates.

disclose them because it had exclusive knowledge of the material facts—including that the increases were for amounts greater than needed to adjust for increases in CPI in the form of internal financial information and documents—that were not known or reasonably accessible to Plaintiff and subclass members. Further, Republic actively concealed material facts from Plaintiff and subclass members, including but not limited to the fact that the increases were more than necessary to adjust for increases in CPI, the purposes of the increases or the contractual method in which they were imposed. In the contract, Republic also made partial representations about the increases—and the way Republic could calculate and implement them—that were misleading because the other facts, including that the increases were more than necessary to adjust for CPI and that Republic experienced no increases in other costs to justify increases, were not disclosed.

106.    These omissions were material as Plaintiff and subclass members would not have paid the increased rates had they known they were simply a profit-enhancement tool, rather than a legitimate increase allowed under the contract. Plaintiff and the subclass members relied upon this omission of material fact in entering the contract and paying the increased rates. Republic omitted these material facts in order to, and with the effect of, inducing Plaintiff and the subclass members to enter the agreements pay the increased rates.

107.    Republic's representations and failures to disclose material facts about the rate increases directly caused Plaintiff and the subclass members into entering the form contract at issue and the immediate harm of paying the increased rates.

108.    As a direct result of the fraudulent practices described above, Plaintiff and each member of the putative subclass has been harmed in that they paid the improper rate increases to their detriment, and seek to recover the excess of the amounts paid as restitution.

**C.      Unlawful Prong.**

109.     Plaintiff and subclass members were also harmed by Republic's unlawful conduct. Breach of contract and breach of the duty of good faith and fair dealing are unlawful under the law of the State of California. Through its rate increase practices set out above and below in Counts I and II, Republic established a uniform practice of unlawfully breaching the form contracts and violating the covenant of good faith and fair dealing. The rate increases were implemented as part of corporate strategy aimed at much—if not all—of Republic's customer base.

110.     Alternatively, unjust enrichment is unlawful under the law of the State of California. Through its rate increase practices set out in Count III, Republic established a uniform practice of garnering money through which it was unjustly enriched. The rate increases were implemented as part of corporate strategy aimed at much—if not all—of Republic's customer base.

111.     To the extent necessary for Plaintiff's claims regarding Republic's unlawful conduct, Plaintiff and subclass members relied upon Republic's representations and omissions and they were a substantial factor in them entering the contract and paying the increased rates. The representations were material and Plaintiff and subclass members would have behaved differently had they known the truth. The omissions were material and Republic had a duty to disclose the material information omitted because it had exclusive knowledge of the material facts that were not known or reasonably accessible to Plaintiff and subclass members; Republic actively concealed material facts from Plaintiff and subclass members; and Republic made partial representations about the increases in the contract that were misleading because the other facts were not disclosed. They would not have entered into contracts with Republic and would not have paid the increased rates at issue had they known the truth about the rate increases and had not been subject to Republic's representations and omissions.

112.     There is a direct causal nexus between Republic's unlawful business practice and

the loss of money—in the form of excessive charges—that damaged Plaintiffs. As a direct result of Republic's unlawful business practices, Plaintiff and each member of the putative subclass has been harmed in that they paid the improper rate increases to their detriment, and seek to recover the excess of the amounts paid as restitution.

## COUNT VI
## UNJUST ENRICHMENT
### (Fuel Recovery Fee Class and Subclasses)

113.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

114.    To the extent necessary, this count is pled in the alternative.

115.    Through its practice of charging the "Fuel Recovery Fee," Republic received money from the putative class which in equity and justice it should not be permitted to keep.   By imposing a "Fuel Recovery Fee" which it knew to be not justified by any related actual or increased fuel costs, not related to any actual or increased fuel costs, and which was not charged to offset any such costs, by suppressing and misrepresenting material facts, and by engaging in other wrongful and unlawful conduct as set out herein, Republic obtained money which properly belongs to the putative class.  The benefit conferred by the putative class was non-gratuitous and Republic realized value from this benefit. It would be inequitable for Republic to retain this benefit.

116.    Plaintiffs and each member of the "Fuel Recovery Fee" Class have been directly and proximately harmed by Republic's conduct in that each paid excessive, deceptive, and unlawful "Fuel Recovery Fees."

## COUNT VII
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLORIDA STATUTE § 501.201
### (Florida Fuel Recovery Fee Subclass)

117.    All allegations and paragraphs in this complaint, aside from other counts, are

incorporated by reference.

118.    To the extent necessary, this count is plead in the alternative.

119.    Plaintiff Budget Inns of Pensacola, Inc. and each member of the subclass are "consumers" under FDUTPA (Fla. Stat. § 501.203(7)). Each paid Republic for products or services.

120.    Plaintiff Budget Inns of Pensacola, Inc. and each member of the subclass have been harmed by Republic's unconscionable, deceptive, and unfair acts and practices in the charging of the "Fuel Recovery Fee." Republic characterizes the "Fuel Recovery Fee" as a legitimate charge which is designed to recover—or bear a relationship to—the actual or increased fuel costs it incurs in providing services to its customers and which is used to offset the increased fuel costs it incurs. In truth, Republic's "Fuel Recovery Fee" does not bear any relation to any increased costs nor any actual costs incurred by Republic and is not used to offset any actual or increased costs. In fact, it is not a true "Fuel Recovery Fee" at all for this reason, but rather is a hidden price increase which Republic misnames to hide its effect and purpose from customers.

121.    Further, Republic already recovers any fuel costs, including increased fuel costs, it might incur through the prices Republic charges for its services and other ancillary fees.

122.    Specifically, Republic's deceptive practices directed toward Plaintiff Budget Inns of Pensacola, Inc.  and putative subclass members include:

   a.  the naming of the "Fuel Recovery Fee" as such given the true nature and effect of the fee;

   b.  the representation that the "Fuel Recovery Fee" is reasonably and directly related to Republic's actual or increased fuel costs;

   c.  the failure to disclose that the "Fuel Recovery Fee" is not related to any fuel cost

Republic incurs;

d.  the failure to disclose that the "Fuel Recovery Fee" is not used to offset any fuel costs Republic incurs but rather is recognized as separate revenue which solely contributes to Republic's profit;

e.  the failure to disclose that the "Fuel Recovery Fee", in intent and effect, operates as a hidden price increase;

f.  the failure to disclose that Republic already wholly recovers for the costs which purportedly justify the "Fuel Recovery Fee" through the fees and prices it charges;

g.  the failure to disclose that periodic increases in the amount of the "Fuel Recovery Fee" are driven, not by any legitimate analysis or cost Republic incurs, but solely by efforts to increase profit margins.

123.   Republic makes these representations and omissions every time it sends an invoice to each subclass member charging the "Fuel Recovery Fee," falsely naming it as such, and falsely describing it. To reiterate the misrepresentation allegations made herein, (1) the false statements made include the term "Fuel Recovery Fee," and other representations about the calculation of the charge including that it was related to Republic's fuel costs, (2) these statements were made on each invoice sent to Plaintiff and putative subclass members[27], (3) the representations were deceptive because, in part, the "Fuel Recovery Fee: has nothing to do with Republic's fuel costs, is not charged to recover such costs, is not used to defray such costs (which are recovered through other fees and prices already), and acts as a hidden price increase which Republic retains as pure profit, and (4) as a result, Republic obtained money through payments Plaintiff and putative

---

[27] Republic sends out invoices at least monthly by US Mail and electronically, and the dates of these invoices include 9/25/2020, 10/25/2020, and 11/25/2020. Republic uses a sophisticated and detailed customer information and billing management system which contains the dates and format of all such representations made to every putative subclass member. Such information is currently in Republic's exclusive possession and control.

subclass members made of the "Fuel Recovery Fee."

124. Republic's misrepresentations, omissions, and deceptive practices as set out herein are likely to mislead reasonable consumers under the circumstances.

125. Republic's actions or inactions directed toward Plaintiff and putative subclass members are also unfair. Such actions or inactions include:

  a. imposing fees it terms "Fuel Recovery Fees" which, in fact, are hidden price increases wholly unrelated to any actual fuel cost Republic may incur;

  b. charging "Fuel Recovery Fees" which do not offset any fuel cost but rather directly contribute to Republic's profit;

  c. charging a "Fuel Recovery Fee": purportedly for costs which Republic already recovers through fees and prices for services;

  d. increasing the "Fuel Recovery Fee" without regard for or analysis of any actual or increased fuel costs incurred.

126. Republic's unfair practices as set out herein are likely to mislead reasonable customers under the circumstances.

127. As a result of the deceptive and unfair practices described above, Plaintiff and each member of the putative subclass incurred actual damages in that they paid the improper fuel surcharges to their detriment.[28]

## COUNT VIII
## VIOLATION OF UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)
### (California Fuel Recovery Fee Subclass)

---

[28] As alleged above, Plaintiff's claims are not that "it did not know" that Republic was imposing a fee it called a "Fuel Recovery Fee," but that the fees Republic labeled as such did not—in intent or practice—cover anything related to fuel. In fact, Republic already recovers such purported costs through other means. The "Fuel Recovery Fee" Republic imposed was an illegitimate mechanism that Republic used simply to pad its profits at the expense of its customers, while misleading customers into believing that such fees were related to fuel costs it incurred. Thus, Plaintiff and putative subclass members were damaged in that—as a direct consequence of Republic charging the deceptive and unlawful "Fuel Recovery Fees"—they paid the fees.

128.    All allegations and paragraphs, aside from other counts, in this complaint are incorporated by reference.

129.    To the extent necessary this Count is pled in the alternative.

130.    California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200-17210) prohibits engaging in "any unlawful, unfair, or fraudulent business act or practice." Cal Bus. & Prof. Code § 17200.

131.    Republic is a "person" as defined in Cal. Bus. & Prof. Code § 17201.

132.    Republic has violated Cal. Bus. & Prof Code § 17200 *et seq*. by engaging in unfair, fraudulent, and unlawful business acts and practices.

**A.    Unfair Prong.**

133.    Plaintiff and subclass members have been harmed by Republic's unfair conduct. Such conduct includes but is not limited to charging a "Fuel Recovery Fee" that is wholly unrelated to Republic's actual or increased fuel costs.

134.    The gravity of the harm caused by Republic's conduct—overcharging Plaintiff and subclass members by seizing on the common understanding of the term "Fuel Recovery Fee" while charging an improper fee—far outweighs the utility, if any, of Republic's conduct in garnering unearned profit from Plaintiff and subclass members through such a scheme. There is little to no justification for Republic's conduct. It is immoral, unethical, oppressive, and unscrupulous. The conduct threatens competition including in that it gives potential customers the appearance of rates that may be lower than competitors while Republic systematically charges more than those rates through the use of the "Fuel Recovery Fee."

135.    The injury to Plaintiff and the subclass members is substantial. Due to Republic's unfair conduct, Plaintiff and the subclass members paid money that was charged in the form of the

improper "Fuel Recovery Fees" charged at every service. This is not outweighed by the utility, if any, of Republic's conduct in garnering unearned profit through its "Fuel Recovery Fee" program. Plaintiff and subclass members could not themselves have reasonably avoided this harm due to Republic's misrepresentations and because Republic did not disclose the information Plaintiff and subclass members would need to discover the harm to them—namely, financial information in Republic's sole possession.

136.    Republic's unfair conduct surrounding rate increases directly caused Plaintiff and the subclass members the immediate harm of paying the "Fuel Recovery Fees."

137.    To the extent necessary for Plaintiff's claims related to Republic's unfair conduct, Plaintiff and subclass members relied upon Republic's representations and omissions—namely in naming the "Fuel Recovery Fee" in order to suggest that it was a fee related to Republic's actual and increased fuel costs and omission of facts that it was not related to any such costs. The representations and omissions were a substantial factor in them entering the contract and paying the "Fuel Recovery Fees." The representations were material and Plaintiff and subclass members would have behaved differently had they known the truth. The omissions were material and Republic had a duty to disclose the material information omitted because it had exclusive knowledge of the material facts that were not known or reasonably accessible to Plaintiff and subclass members; Republic actively concealed material facts from Plaintiff and class members; and Republic made partial representations about the "Fuel Recovery Fee"—namely the common sense implication of its title—that were misleading because the other facts were not disclosed. They would not have entered into contracts with Republic and would not have paid the "Fuel Recovery Fees" at issue had they known the truth about the fees and had not been subject to Republic's representations and omissions.

138.    As a result of the unfair practices described above, Plaintiff and each member of the putative subclass has been harmed in that they paid the improper "Fuel Recovery Fees" to their detriment, and seek to recover the excess of the amounts paid as restitution.[29]

**B.    Fraudulent Prong.**

139.    Plaintiff and subclass members have also been harmed by Republic's fraudulent representations. Such representations include but are not limited to the representation that the "Fuel Recovery Fee"—due to the implications of naming it as such on every invoice on which it was charged—was related to Republic's actual or increased fuel costs and used to defray those costs. This representation was false and the "Fuel Recovery Fee" was not related to Republic's actual or increased fuel costs and not charged to defray such costs. Republic knew it to be false at the time it made the representations and did so with the intent of inducing Plaintiff and subclass members into paying the "Fuel Recovery Fees."

140.    To the extent necessary, Plaintiff and subclass members relied upon this representation, as made by Republic, in paying the "Fuel Recovery Fee" in that it was a substantial factor in their decisions to do so. Plaintiff specifically relied on the representation made on his invoices. This representation was material as Plaintiff and subclass members would not have paid the "Fuel Recovery Fee" had they known they was simply a profit-enhancement tool. The representations Republic made regarding the rate increases was false or misleading as the rate increases implemented far exceeded any amount necessary to adjust for increases in CPI. Republic made these representations in order to, and with the effect of, inducing Plaintiff and subclass

---

[29] As alleged above, Plaintiff's claims are not that "it did not know" that Republic was imposing a fee it called a "Fuel Recovery Fee," but that the fees Republic labeled as such did not—in intent or practice—cover anything related to Republic's actual or increased fuel costs. In fact, Republic already recovers such purported costs through other means. The "Fuel Recovery Fee" Republic imposed was an illegitimate mechanism that Republic used simply to pad its profits at the expense of its customers, while misleading customers into believing that such fees were related to fuel costs it incurred. Thus, Plaintiff and putative class members were damaged in that—as a direct consequence of Republic charging the unfair "Fuel Recovery Fees"—they paid the fees.

members to pay the "Fuel Recovery Fees."

141.     Plaintiff and subclass members were also harmed by Republic's fraudulent omissions. Such omissions include but are not limited to failing to disclose that, contrary to the common understanding of the "Fuel Recovery Fee," that Republic was charging a fee that was completely unrelated to its actual or increased fuel costs solely to be recognized as profit.

142.     The facts Republic did not disclose were material and Republic had a duty to disclose them because it had exclusive knowledge of the material facts—including that the "Fuel Recovery Fee" had nothing to do with its actual or increased fuel costs, that Republic did not have any increases in fuel costs, and that the Fee was not charged to defray such costs evident from internal financial information and documents—that were not known or reasonably accessible to Plaintiff and class members. Further, Republic actively concealed material facts from Plaintiff and subclass members, including but not limited to the fact that the "Fuel Recovery Fee" was unrelated to Republic's actual or increased fuel costs and that the Fee was not charged to defray those costs. Republic also made partial representations about the "Fuel Recovery Fee"—including but not limited to naming the fee such that the common meaning of it implies that it is a fee related to Republic's actual and increased fuel costs and charged to defray such costs—on invoices that were misleading because the other facts, including that the "Fuel Recovery Fee" was unrelated to Republic's actual or increased fuel costs and not charged to defray such costs, were not disclosed.

143.     These omissions were material as Plaintiff and subclass members would not have paid the "Fuel Recovery Fees" had they known they were simply a profit-enhancement tool, rather than a legitimate fee related to Republic's actual or increased fuel costs. Plaintiff and the subclass members relied upon this omission of material fact in paying the "Fuel Recovery Fees." Republic omitted these material facts in order to, and with the effect of, inducing Plaintiff and the subclass

members to pay the "Fuel Recovery Fees."

144.    Republic's representations and failures to disclose material facts about the "Fuel Recovery Fee" were likely to deceive an ordinary consumer given the common understanding of the term "Fuel Recovery Fee" and Republic's representations and omissions.

145.    Republic's representations and failures to disclose material facts about the "Fuel Recovery Fee" directly caused Plaintiff and the subclass members the immediate harm of paying the increased rates.

146.    As a direct result of the fraudulent practices described above, Plaintiff and each member of the putative subclass has been harmed in that they paid the improper "Fuel Recovery Fees" to their detriment, and seek to recover the excess of the amounts paid as restitution.

**C.    Unlawful Prong.**

147.    Plaintiff and subclass members have also been harmed by Republic's unlawful conduct. Unjust enrichment is unlawful under the law of the State of California. Through its rate increase practices set out in Count IX, Republic established a uniform practice of garnering money through which it was unjustly enriched. The "Fuel Recovery Fees" were part of corporate strategy aimed at much—if not all—of Republic's customer base.

148.    To the extent necessary for Plaintiff's claims regarding Republic's unlawful conduct, Plaintiff and subclass members relied upon Republic's representations and omissions and they were a substantial factor in them paying the "Fuel Recovery Fees." The representations were material and Plaintiff and subclass members would have behaved differently had they known the truth. The omissions were material and Republic had a duty to disclose them because it had exclusive knowledge of the material facts that were not known or reasonably accessible to Plaintiff and subclass members; Republic actively concealed material facts from Plaintiff and subclass

members; and Republic made partial representations about the increases in the contract that were misleading because the other facts were not disclosed. Plaintiff and subclass members would not have paid the "Fuel Recovery Fees" at issue had they known the truth about the fees and had not been subject to Republic's representations and omissions.

149.    There is a direct causal nexus between Republic's unlawful business practice and the loss of money—in the form of improper fees—that damaged Plaintiff and subclass members. As a direct result of Republic's unlawful business practices, Plaintiff and each member of the putative subclass has been harmed in that they paid the improper "Fuel Recovery Fees" to their detriment, and seek to recover the excess of the amounts paid as restitution.

## PRAYER FOR RELIEF

150.    Plaintiffs, on behalf of themselves and each member of the putative classes and subclasses, demand all remedies and damages available to them, including all unlawful rate increases paid, the entirety of all Fuel Recovery Fees paid, injunctive relief (including declaratory relief and a prohibition on future unlawful rate increases or surcharges), restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

## JURY DEMAND

151.    Plaintiff and the Classes are entitled to, and demand, a trial by jury.

Respectfully submitted,

*/s/ T. Ryan Langley*
T. Ryan Langley
HODGE & LANGLEY, PC
Federal ID No. 10047
229 Magnolia Street
PO Box 2765
Spartanburg, SC 29304
Phone:  864.585.3873
rlangley@hodgelawfirm.com

Oscar M. Price, IV
Nicholas W. Armstrong
Garrett Owens
PRICE ARMSTRONG, LLC
1919 Cahaba Road
Birmingham, AL 35223
Phone: 205.208.9588
oscar@pricearmstrong.com
nick@pricearmstrong.com
garrett@pricearmstrong.com

Ryan Lutz
CORY WATSON
2131 Magnolia Ave S
Birmingham, AL 5205
Phone: 205.850.8532
rlutz@corywatson.com

*Attorneys for Plaintiffs*