**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Buffalo Seafood House LLC, et al., <br><br> Plaintiffs, <br> v. <br><br> Republic Services, Inc., et al., <br><br> Defendants. | Case No. 7:22-cv-1242-RMG <br><br><br> **ORDER AND OPINION** |

This matter is before the Court on five separate motions. First, Plaintiffs moved for class certification. (Dkt. No. 213). Defendants responded in opposition to that motion (Dkt. No. 219), and Plaintiffs replied (Dkt. No. 223). Second, Defendants moved for partial summary judgment for lack of personal jurisdiction. (Dkt. No. 217). Plaintiffs responded in opposition to that motion (Dkt. No. 225), and Defendants replied (Dkt. No. 228). Third, Defendants moved to exclude expert testimony. (Dkt. No. 215). Plaintiffs responded in opposition to that motion (Dkt. No. 224), and Defendants replied (Dkt. No. 230). The Court held a hearing on the three motions. (Dkt. No. 252). After the hearing, Plaintiffs moved to transfer the claims of certain named Plaintiffs. (Dkt. No. 257). Defendants responded to that motion (Dkt. No. 260), and Plaintiffs replied (Dkt. No. 263). The Plaintiffs also moved for the Court to set a briefing schedule and to hold Plaintiffs' initial motion for class certification in abeyance. (Dkt. No. 262). For the reasons set forth below, the Court denies Plaintiffs' motion for class certification and terminates as moot Defendants' motion for partial summary judgment and Defendants' motion to exclude expert testimony. The Court grants Plaintiffs' motion to transfer. And lastly, the Court grants-in-part and denies-in-part Plaintiffs motion to set briefing schedule and to hold their initial motion for class certification in abeyance.

1

I.    **Background**

Plaintiffs brought this putative class action asserting state law claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment, as well as claims under California and Florida unfair trade practices acts. (Dkt. No. 126 at 29-50). Plaintiffs asserted these claims by alleging that Republic Services, Inc. ("RSI") and its subsidiaries raised their service rates and charged fees exceeding those permitted by their form contracts. (*Id.* at 1-3).

The specific provision that Plaintiffs allege Defendants breached is the "Rate Adjustments" provision:

> Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in (a) disposal costs; (b) transportation costs due to a change in location of Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Consumers; (d) the average weight per cubic yard of Customers Waste Materials above the number of pounds per cubic yard upon which the rates provided in this Agreement are based as indicated on the cover page of this Agreement; or (e) Company's costs due to change in Applicable Laws. Company may increase rates for reasons other than those set forth above with Customer's consent, which may be evidenced verbally, in writing or by the parties' actions and practices.

(Dkt. No. 213-5 at 2).

Discovery related to the filing of these motions is complete, and the Parties have now filed class certification, *Daubert*, and dispositive motions.  The Court addresses the motions below.

II.    **Plaintiffs' Motion for Class Certification (Dkt. No. 213).**

Plaintiffs seek certification under Federal Rule of Civil Procedure 23 for the following two classes:

2

> The Rate Increase Class: All entities and people who reside in the Untied States who, from January 1, 2017 through the date of class notice, entered into a Rate Adjustments provision that allows for increases to "adjust for" increases in costs or CPI and paid rates to Republic in excess of those originally listed in the written contract as a result of Republic's YMP policy.

> The Fees Class: All entities and people who reside in the United States who, from January 1, 2017 through the date of class notice, entered into a Rate Adjustments provision that allows for increases to "adjust for" increases in costs or CPI and paid Fuel Recovery Fees and/or Environmental Recovery Fees to Republic.

(Dkt. No. 213 at 28-29). Plaintiffs also seek certification of two subclasses for entities and people who reside in California and Florida. (*Id.* at 29). Excluded from these Classes are entities and people who reside in Alabama, Arkansas, Missouri, New Jersey, Oklahoma, and Kentucky. Excluding those states from the 41 in which RSI conducts business means Plaintiffs seek to certify a class action that covers 36 states. (*Id.* at 3).

### A. Rule 23 Standards

There are two parts to Rule 23 class certification. A plaintiff must establish the prerequisites to certification, which are found in Rule 23(a), FRCP, and also satisfy at least one subsection of Rule 23(b), FRCP. As recently reiterated by the Fourth Circuit Court of Appeals, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule and must do so with 'evidentiary proof.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 20-2184, 2021 WL 3379035, at \*2 (4th Cir. Aug. 4, 2021) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). It is well established that "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350.

The four prerequisites to certification are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(A). These four prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 460 (2013).

In addition to establishing all four Rule 23(a) prerequisites, a plaintiff must also meet the Rule 23(b) requirements for maintenance of a class action. Plaintiffs here are seeking certification pursuant to Rule 23(b)(3), meaning they must show that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). The two Rule 23(b)(3) requirements are often referred to as "predominance" and "superiority." The factors pertinent to assessing the predominance and superiority requirements include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Certification is only proper if the court, after conducting a "rigorous analysis," is satisfied that the Rule 23 prerequisites have been met. *Dukes*, 564 U.S. at 350–51. Often, that "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. However, "the merits of a claim may be considered only when 'relevant to determining whether

the Rule 23 prerequisites for class certification are satisfied.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015) (quoting *Amgen*, 568 U.S. at 466). Because the class-action device is "an exception to the general rule that a party in federal court may vindicate only his own interests," "the district court is required to make findings on whether the plaintiffs carried their burden." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317–18 (4th Cir. 2006) (citation omitted).

## B. Rule 23(b) Analysis

The Court has carefully considered the requirements of Rule 23 and the record in this case. For the reasons discussed in this section, Plaintiffs motion is denied because, even if the Court assumes (without deciding) that Plaintiffs can meet the requirements of Rule 23(a), Plaintiffs have failed to meet the requirements of Rule 23(b).

### 1. Predominance

In cases implicating a multiplicity of state laws, "the party seeking certification . . . must . . . provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010); *accord Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) ("The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when various laws have not been identified and compared."). It is "the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law." *Sacred Heart*, 601 F.3d at 1180. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).

The Court analyzes predominance for Plaintiffs' (a) breach of contract claim, (b) breach of good faith and fair dealing claim, and (c) unjust enrichment claim.[1]

### a. Breach of Contract Claim

For multi-state breach of contract class actions, courts have required Plaintiffs to analyze the variation in the state law under which any extrinsic evidence would have to be scrutinized. *Advance Trust & Life Escrow Servs., LTA v. Security Life of Denver Insurance Company*, 1:18-cv-01897-DDD-NYW, 2020 WL 8186476, at *3-4 (D. Colo. Apr. 13, 2020). Even if it is "unlikely that extrinsic evidence [i]s relevant to interpreting unambiguous form contract terms," a district court, to certify a nationwide class, must "conduct an extensive analysis of whether any state-law variations exist[ ]" and, if they do, "determine whether those variations defeat[] predominance." *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 18-40605, 2020 WL 1443531, at *10 (5th Cir. Mar. 25, 2020) (noting that class certification is generally proper where the outcome will not depend on extrinsic evidence that would be different for each putative class member, but that predominance may be defeated if there is "considerable variation in the state law under which any extrinsic evidence would have to be scrutinized" (quoting *Sacred Heart Health Sys.*, 601 F.3d at 1180)).

Plaintiffs argue predominance is met because elements of breach of contract do not vary between the states and because RSI's conduct of illegally increasing prices was standardized among putative class members. (Dkt. No. 213 at 24, 37-40). Plaintiffs argue that the putative class members were subject to a common Yield Management Process Algorithm and a universal Fee/Rate Adjustment Policy that violated the form contract. (*Id.*) Plaintiffs argue that those

---

[1] The Court does not analyze Plaintiffs' Florida and California unfair trade practices claims under Rule 23 because the Court, as discussed below, severs and transfers the Florida and California Plaintiffs' cases to their respective home districts.

common questions of fact predominate over any variations that may exist among class members. (*Id.*)

Defendants argue that Plaintiffs did not conduct the required conflict-of-laws analysis for a multi-state class and failed to meet their burden in showing common questions of law predominate. (Dkt. No. 219 at 31-34). Defendants note that a rigorous analysis is required even when considering a form contract because admissibility of extrinsic evidence varies across the states. (*Id.*) Defendants specifically cite California's liberal parol evidence rule as an issue that this Court would have to address if Plaintiffs' proposed classes are certified. (*Id.*)

In their reply, Plaintiffs argue that extrinsic evidence, even if allowed, is not relevant because there is no dispute as to the meaning of the rate adjustment provisions in the form contracts. (Dkt. No. 223 at 15-16). Plaintiffs argue that extrinsic evidence is not relevant because no party has claimed that the rate adjustment provision in the contract is ambiguous and that the only dispute is whether or not RSI's conduct violates the provision. (*Id.*) Plaintiffs further argue that if any extrinsic evidence is relevant here it would be common to the class because it would be related to the form contract. (*Id.*)

At the motions hearing, the Court questioned the parties regarding differences in state laws. Plaintiffs admitted that there was a difference among the states in the use of extrinsic evidence but argued that ambiguity is not an issue in this case. Defendants confirmed to the Court that they do not waive their ability to argue that the contract is ambiguous. Specifically, Defendants identified that the meaning of the consent clause in the Rate Adjustment Provision is at issue and may require extrinsic evidence to interpret. Additionally, Defendants indicated that there is a variance among states on whether consent to a price change can be shown by payment.

Here, Plaintiffs have not met this burden on their breach of contract claim. Plaintiffs did not satisfy the Court in showing that the differences in the states' extrinsic evidence standards were immaterial. Defendants here will likely attempt to introduce extrinsic evidence regarding the consent clause of the Rate Adjustment Provision. "But the laws of the 50 states vary as to the admissibility of extrinsic evidence—sometimes drastically so." *Rapp v. Green Tree Serv., LLC*, 302 F.R.D. 505, 510 (D. Minn. 2014). Because differences among states' extrinsic evidence standards could greatly affect how important provisions of the form contract are interpreted and ultimately whether there was a breach of those provisions, the Court finds that common questions of law do not predominate here.

Additionally, the Court finds that the variation among states regarding consent also precludes a finding of predominance. Defendants here will likely argue that their customers agreed and consented to the increased price of services by paying the increasing invoices. Some states, such as Louisiana, find that payment of increasing invoices show consent to modification of the contract. *See Horizon Sec. & Vault Complex v. BFI Waste Sys. Of N. Am.*, No. 03-cv-1214 (ML), 2003 22872097, at *2 (E.D. La. Dec. 1, 2003) (finding that defendant's payment of "periodically increasing invoices without question or complaint for nine years" showed consent to modification). Other states may not find the same. *See Paolella v. Browning-Ferris, Inc.*, 973 F.Supp. 508, 514 (E.D. Pa. 1997), *aff'd*, 158 F.3d 183 (3d Cir. 1998) ("It is a matter of common sense, and of general knowledge of human nature, that people are not inclined knowingly to consent to being economically gouged. For example, suppose that there is opaque, misleading language in a contract which has been slipped under the eye, and pen, of a customer. When that business unilaterally seeks to modify monetary and contractual terms in an agreement containing misleading, confusing language and formula, undiscernible by any but the most wary,

vigilant, and sophisticated consumer, it cannot be said that the person who did not catch the fraud consented to be bilked.").

### b. Breach of Good Faith and Fair Dealing Claim

For similar reasons, predominance is not met for Plaintiffs' breach of good faith and fair dealing claim. At the motions hearing, the Court noted the variance in implied covenant claims across the states. Plaintiffs acknowledged the difficulties in showing predominance for implied covenant claims and responded that they would concede their breach of good faith and fair dealing claim for a nationwide class on breach of contract.

Here, Plaintiffs failed to provide any analysis of state law variations for their breach of good faith and fair dealing claim and, for that reason alone, Plaintiffs motion should be denied. *See, e.g.*, *Cochran v. Volvo Grp. N. Am., LLC*, 2013 WL 1279103, at *4 (M.D.N.C. Apr. 22, 2013) ("This case involves state law causes of action for breach of warranty. Plaintiffs have not shown that the law applicable to proving a breach of warranty, or even an element of a breach of warranty, is the same across the country, nor have Plaintiffs shown that the law of one state should apply. In the absence of this showing, the Court cannot tell whether the resolution of the defect and repair questions would resolve an issue that is central to the validity of the warranty claim. Therefore, Plaintiffs have failed to establish that there are questions of law or fact common to the class which predominate over any questions affecting individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the dispute. The motion for class certification should be denied.")

Moreover, the Court, conducting its own research, finds that predominance would not be met for Plaintiffs' breach of good faith and fair dealing claims because of the variance in state laws. Some states, for example, require a breach of an express term of the contract and other states

require a special relationship between the parties. *See Gustafson v. BAC Home Loans Serv., LP*, 294 F.R.D. 529, 547 (C.D. Cal. 2013) (comparing Florida implied covenant requirements with Texas implied covenant requirements). States also differ on whether the standard for good faith is subjective or objective. *See Lane v. Wells Fargo Bank, N.A.*, No. C 12-4026 WHA, 2013 WL 3187410, at \*4 (N.D. Cal. June 21, 2013) (comparing California intent requirements for implied covenant claims with Iowa). Accordingly, adjudicating Plaintiffs' claim for breach of good faith and fair dealing would require applying a multitude of different state law standards. The variations in state law here swamp the common issues and defeat predominance.

### c.  Unjust Enrichment Claim

Plaintiffs argue that, under South Carolina choice of law rules, Arizona law should apply to the proposed class's unjust enrichment claims. (Dkt. No. 213 at 25-27). Defendants argue that laws of the proposed class members' home states apply and, because the law of unjust enrichment varies among the states, class certification is not appropriate. (Dkt. No. 219 at 34-36).

"[I]t is unclear whether South Carolina would apply the First or Second Restatement's choice of law analysis to unjust enrichment claims." *In re Blackbaud, Inc., Customer Data Breach Litigation*, 567 F.Supp.3d 667, 677 (D.S.C. 2021). Under the First Restatement of Conflict of Laws, "[w]hen a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched." RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 453. Alternatively, the Second Restatement provides that "[i]n actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAW § 221. Factors to consider

under this approach include: (1) "the place where a relationship between the parties was centered";

(2) the place where the benefit was received; (3) the place where the acts conferring the benefit

were done; and (4) the domicile, place of incorporation and place of business of the parties. *Id.* at

§ 221(2). These contacts are to be evaluated according to their relative importance with respect to

the particular issue. *Id.* at § 221. The Second Restatement also notes that "[t]he place where a

relationship between the parties was centered . . . is the contact that, as to most issues, is given the

greatest weight in determining the state of the applicable law." *Id.* at cmt. d.

The Court finds that the rigid approach under the First Restatement should not apply to

multi-state class actions. The First Restatement would not allow a court to consider the competing

polices of the states implicated by the lawsuit or the constitutional limitations on choice of law.

Additionally, the Court notes that most of the states have adopted the Second Restatement of

Conflict of Laws. For these reasons and because South Carolina has not clearly adopted an

approach, the Court applies the Second Restatement to this case.

Here, RSI and its customers' relationships are centered in the customers' home state. The

customers' home state is where the waste hauling services occur, and they are where the customers

conferred the alleged benefit to RSI. Accordingly, under the Second Restatement, the law of the

proposed class members' home states would apply. This would be the law of 36 different states.

Courts have long held that the laws of unjust enrichment vary from state to state and

therefore are not appropriate for nationwide class action treatment. *See, e.g., Vulcan Golf, LLC v.

Google, Inc.,* 254 F.R.D. 521 (N.D.Ill.2008); *Ronat v. Martha Stewart Living O'mnimedia,* No.

05-520-GPM, 2008 WL 4963214 (S.D. Ill. Nov.12, 2008); *Siegel v. Shell Oil Co.,* 256 F.R.D. 580,

2008 WL 4378399 (N.D. Ill. Sept.23, 2008); *Lilly v. Ford Motor Co.,* No. 00 C 7372, 2002 WL

507126 (N.D. Ill. Apr.3, 2002); *Clay v. American Tobacco, Co.,* 188 F.R.D. 483 (S.D.Ill.1999).

The Court here follows the reasoning of those cases and finds that, because the laws of unjust enrichment will vary between the 36 states, predominance is not met for Plaintiffs' unjust enrichment claims.

## 2. Superiority

Plaintiffs cannot meet the superiority requirement for any claim. The superiority requirement asks whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It aims to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The "matters pertinent" to a finding of superiority include: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

An analysis of relevant state law is necessary not only to show predominance, but also to show superiority to alternative venues. Attempting to apply the law of a multiplicity of jurisdictions can present problems of manageability for class certification under Rule 23(b)(3). *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir.1996) ("[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law").

Here, Plaintiffs have not shown that a multi-state class action is a superior method of adjudication. Plaintiffs argue that superiority is met because the claims concern a common practice or policy affecting all proposed members of the class. Even considering the common factual questions presented here, Plaintiffs have not shown that combining claims under 36 different state laws is superior to separating them into different forums. Nor have they explained how, at trial, the Court can avoid confusing the jury with a parade of different jury instructions and witnesses whose testimony may be relevant to some claims but forbidden from consideration in others. Because Plaintiffs' claims implicate the laws of so many jurisdictions, the Court finds that a single multi-state class action is not manageable and is not a superior method of adjudication.

Because there are predominance and superiority issues based on the application of different state laws, the Court denies Plaintiffs' motion to certify a multi-state class. Plaintiffs are not, however, precluded from seeking a South Carolina only class. *See, e.g., Anderson v. Central Reserve Life Ins. Co.*, 3:08-cv-4011-CMC, 2010 WL 11652379, at *18-19 (D.S.C. May 13, 2010) (denying certification of multi-state class because plaintiff failed to "offer any foundation for a determination that there are no material variances in the law applicable to the claims of the putative class members from different states," but accepting Plaintiff's proposed alternative of a statewide class.)

III.    **Defendants' Motion to Exclude Expert Testimony (Dkt. No. 215).**

Defendants moved to exclude testimony and to strike the declaration of Plaintiffs' damages expert Patrick Kilbourne. (Dkt. No. 215). Mr. Kilbourne's report provides a damages model by aggregating enterprise-wide price increases and costs. (Dkt. No. 213-1 at 15-18, 22-23). Based on the Court's rulings above, Plaintiffs may now only seek certification of a South Carolina class.

Because Mr. Kilbourne's report and testimony addresses the near-nationwide class, the viability of his report is now moot. Accordingly, the Court terminates this motion.

## IV.    Defendants' Motion for Partial Summary Judgment (Dkt. No. 217).

Defendants moved for partial summary judgment for claims arising out of Defendants' activities outside of South Carolina. (Dkt. No. 217 at 1). Defendants argued that this Court lacks personal jurisdiction over Plaintiffs' claims arising from contracts with Defendant Allied Waste Services of North America, LLC, Defendant Consolidated Disposal Service, LLC, and dozens of unnamed RSI subsidiaries. (*Id.*) Plaintiffs argued that RSI and its subsidiaries operate as a single enterprise in such a way that gives the Court jurisdiction over RSI and its subsidiaries out-of-state conduct. (Dkt. No. 225 at 1-2).

Because the Court denied Plaintiffs' motion for class certification of the requested multi-state class, whether the Court has jurisdiction over Plaintiffs' out-of-state claims is moot. Accordingly, the Court terminates this motion.

## V.    Plaintiffs' Motion to Transfer (Dkt. No. 257)

After the motions hearing, where the Court indicated its intention to deny certification of the nationwide class, Plaintiffs Garibian & Associates Accountancy Corporation ("Garibian") and Budget Inns of Pensacola, Inc. ("Budget Inns") moved to transfer their cases to the Central District of California and the Northern District of Florida, respectively. (Dkt. No. 257 at 1). In their response, Defendants point out that Garibian's and Budget Inns' motion is a request for a transfer of venue that first requires a severance. (Dkt. No. 260 at 1). Defendants also indicated that they do not oppose Plaintiffs' motion, but, out of concern that Garibian or Budget Inns may seek a nationwide class in either of the transferee courts, requested that the Court enter its order on the multi-state class and simultaneously direct Garibian and Budget Inns to either file a new motion

to sever or supplement its current motion to sever with new proposed complaints. (Dkt. No. 260 at 2). Plaintiffs, in their reply, indicated that they will not pursue multi-state certification in either transferred case and will only seek certification of state classes. (Dkt. No. 263 at 1-2).

### A. Severance

Rule 21 provides that the court "may . . . sever any claim against a party." Fed. R. Civ. P. 21. Commonly, Rule 21 is invoked to sever parties improperly joined or where venue is improper as to some but not all defendants. *See C.L. Ritter Lumber Co., Inc. v. Consolidation Coal Co.*, 283 F.3d 226 (4th Cir. 2002); *Sehler v. Prospect Mortg., LLC*, 2013 WL 6145705, at \*2 (E.D. Va. Nov. 21, 2013); *see also* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1689 (3d ed. 2020). However, even where the parties are appropriately joined and venue is proper, a court may sever any claim and proceed with it separately or transfer it to a more convenient forum. *See* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1689.

Courts in the Fourth Circuit wield "virtually unfettered discretion" in determining whether and when to sever a claim. *Grayson Consulting, Inc. v. Cathcart*, 2014 WL 1512029, at \*2 (D.S.C. Apr. 8, 2014) (citing *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 604 n.9 (E.D. Va. 2005)); *see also Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003) (citing *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031-32 (4th Cir. 1983)) ("A district court possesses broad discretion in ruling on a requested severance under Rule 21."). That discretion similarly allows for the severance and transfer of parties in the interest of justice. *See Spencer White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 361-62 (5th Cir. 1974).

Courts in the Fourth Circuit weigh multiple factors when determining whether to sever claims under Rule 21. These factors include:

> (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

Fed. R. Civ. P. 21.

Here, the first and second factor weigh in favor of severance because, as outlined above, the laws of the states differ; therefore, issues, such as extrinsic evidence, are significantly different and may require different documentary proof. Factor three weights in favor of severance because Defendants agree with Plaintiffs request to sever and transfer the cases. Factor four weighs in favor of severance because Plaintiffs Garibian and Budget Inns would be deprived of the opportunity to assert claims under their home state unfair trade practices acts as well as state common law claims. Accordingly, the Court exercises its discretion and finds that severance of Garibian and Budget Inns is appropriate.

## B. Transfer

Section 1404(a) of Title 28 of the United States Code provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). District courts have wide discretion to transfer an action under 1404(a) "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).

A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry. *Hill-Green v. Experian Info. Sols.*, No. 3:19CV708, 2020 WL 5539042, at *4 (E.D.

16

Va. Sept. 15, 2020). First, the court must determine whether the claims at issue could have originally been brought in the transferee forum. *Id.* Thus, "a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh v Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 631 (E.D. Va. 2003). Second, a court must conduct a balancing test to determine whether transfer is warranted, considering the following four factors: (1) plaintiff's choice of forum; (2) the convenience of the parties; (3) witness convenience and access; and (4) the interests of justice. *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)).

Here, the Court finds that Garibian and Budget Inns' claims could have originally been brought in California and Florida, respectively. Additionally, the transfer factors weigh in favor of transfer. Specifically, the Court finds that the interests of justice would be served for three reasons. First, California and Florida courts would be deciding state law issues. Second, those forums will be more familiar with the state laws that govern the case. And third, problems regarding conflict of laws and the application of another state's laws would be avoided.

### C. Defendants' Concern

Defendants concern that Plaintiffs Garibian and Budget Inns may seek a nationwide class in the transferee courts is protected by the Supreme Court's decision in *China Agritech v. Michael H. Resh*, 584 U.S. 732 (2018). The Supreme Court ruled that a pending class action does not toll the statute of limitations for absent class members who bring subsequent class actions. *Id.* at 746-48. The Supreme Court noted that "if the class mechanism is not a viable option for the claims, the decision denying certification will be made at the outset of the case, litigated once for all would-be class representatives." *Id.* at 740. To hold otherwise, the Supreme Court reasoned, would "allow

the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 743.

The Court here denies certification on Plaintiffs' near-nationwide class. That decision would apply to any subsequent attempt at near-nationwide class, meaning any subsequent attempt at a near-nationwide class would not benefit from tolling based on the filing of this lawsuit. To hold otherwise would allow Plaintiffs to resuscitate the litigation in a way that *China Agritech* prohibits. Additionally, Plaintiffs indicate that they will not pursue near-nationwide certification in either transferred case and will only seek certification of Florida and California classes. (Dkt. No. 263 at 1-2). Accordingly, the Court denies Defendants' request to direct Plaintiffs to either file a new motion to sever or supplement its current motion to sever with new proposed complaints.

**VI.    Plaintiffs' Motion to Set Briefing Schedule and Hold Motion for Class Certification in Abeyance (Dkt. No. 262).**

At the motions hearing, the Court indicated that it would not certify a national class and would allow additional briefing and discovery regarding a South Carolina only class. The Court indicated 90 days may be appropriate for completion of additional briefing and discovery.

Plaintiffs request that the Court set a briefing "set a briefing schedule allowing (a) Plaintiffs until November 30 (45 days from the last hearing) to file an amended motion for class certification for South Carolina only class along with a South Carolina only expert report and potentially move to add additional class representative(s), (b) Defendants until January 21 (51 days) to file a responsive brief and any responsive expert report, and (c) Plaintiffs until January 28 (7 days) to file a reply brief." (Dkt. No. 262 at 2). Defendants agree to this schedule. (*Id.*)

The Court directs the Parties to submit a joint proposed scheduling order regarding a new complaint, if necessary; renewed expert reports; Plaintiffs' motion for class certification of the

South Carolina class; dispositive motions; *Daubert* motions; and other pretrial briefing within 7 days of this Order.

Plaintiffs further request "that the Court hold the currently pending motion for class certification in abeyance pending filing of the amended motion for class certification." (*Id.*) Defendants oppose this request. (*Id.*)

Because the Court largely previewed its concerns with Plaintiffs' motion for nationwide class certification on the record at the motions hearing, the Court finds that no interest would be served in holding Plaintiffs' initial motion for class certification in abeyance. Additionally, the Court is aware of the policy concerns outlined in *China Agritech* and finds that issuing a written order on Plaintiffs' initial motion for class certification best serves those concerns.

## VII.    Conclusion

For the reasons stated above the Court **DENIES** Plaintiffs' motion for class certification (Dkt. No. 213). The Court **TERMINATES AS MOOT** Defendants' motion to exclude expert testimony (Dkt. No. 215) and Defendants motion for partial summary judgment (Dkt. No, 217).

The Court **GRANTS** Plaintiffs' motion to transfer. (Dkt. No. 257). Plaintiffs Garibian's and Budget Inns' claims are **SEVERED** and **TRANSFERRED** to the Central District of California and Northern District of Florida, respectively.

The Court **DENIES-IN-PART** and **GRANTS-IN-PART** Plaintiffs' motion to set briefing schedule and hold motion for class certification in abeyance (Dkt. No. 262). The Court **DIRECTS** the Parties to submit a joint proposed scheduling order regarding a new complaint, if necessary; renewed expert reports; Plaintiffs' motion for class certification of the South Carolina class; dispositive motions; *Daubert* motions; and other pretrial briefing within 7 days of this Order.

_s/ Richard Mark Gergel_____
Richard Mark Gergel
United States District Judge

October 28, 2024
Charleston, South Carolina